J-A22022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES J. ENGLERT | : | |
| | : | |
| Appellant | : | No. 204 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 3, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-MD-0000004-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES J. ENGLERT | : | |
| | : | |
| Appellant | : | No. 205 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 3, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-MD-0000005-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES J. ENGLERT | : | |
| | : | |
| Appellant | : | No. 206 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 3, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-MD-0000006-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-A22022-21

|  |  | : |  |
|---|---|---|---|
| v. |  | : |  |
|  |  | : |  |
|  |  | : |  |
|  |  | : |  |
| JAMES J. ENGLERT |  | : |  |
|  |  | : |  |
| Appellant |  | : | No. 207 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 3, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-MD-0000011-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| JAMES J. ENGLERT | : |  |
|  | : |  |
| Appellant | : | No. 208 MDA 2021 |

Appeal from the Judgment of Sentence Entered February 3, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-MD-0000012-2021

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.: **FILED: DECEMBER 15, 2021**

Appellant, James J. Englert, appeals from the judgment of sentence entered on February 3, 2021, following his bench trial convictions for five counts of indirect criminal contempt, 23 Pa.C.S.A. § 6114.  We affirm.

The Commonwealth charged Appellant with five, separate counts of indirect criminal contempt for alleged violations of a protection from abuse (PFA) order filed by A.C., an adult female.[1]  The trial court held a

_____

[1]  We use the victim's initials or refer to her as "Victim" to protect her identity.

- 2 -

videoconference hearing in this matter on February 3, 2021.[2]  The trial court

summarized the facts and procedural history of these cases as follows:

> [Victim knew Appellant], she had a prior sexual relationship with him and has a [PFA] protecting her from [Appellant] since July of 2018, [expiring] in March of 2021.  The PFA [o]rder evicted [Appellant] from [a shared] residence and he was ordered to have no contact with [Victim].  They have two children together and according to [Victim], [Appellant] has no custody rights because there is no existing custody order and the Schuylkill County Children and Youth Agency ("C & Y") has deemed him a threat to the children.
>
> [At docket number] MD-4-21, [Victim] testified that on December 12, 2020, [Appellant] came to her home [] in Coaldale, Pennsylvania, walked into the home and asked to see the children.  [Victim] told [Appellant] to leave, and he refused to do so without receiving a ride.  Someone called 911, the police arrived and they could not find [Appellant], who had fled.  [Victim] testified that [Appellant] sends her text messages every day, including that day, and some days as many as twenty texts per day, and has been doing so since a time prior to Christmas 2020.  [Victim] testified that [Appellant] never respected the PFA [o]rder.
>
> [At docket number] MD-5-21, [Victim] testified that on December 14, 2020 she was shopping with their two-year-old son at a Dollar Store and was walking toward her car in the parking lot.  [Appellant] pulled up in his girlfriend's car, yelling at [Victim] that he wanted to see the children.  [Appellant] charged at [Victim] with the car, and [Victim] ran with the young child back into the store to avoid being hit.  [Appellant] yelled at her that it was "not right," that someone was "going to pay" if she took the kids away from him, that he didn't care, and that she was a liar.  [Victim] was terrified.  She was scared for her child, and the child was mortified.  The child went into shock and remained quiet all day which was abnormal for him.

---

[2] The trial court allowed Appellant to represent himself *pro se* at the proceeding, after determining that he voluntarily waived his right to counsel. *See* N.T., 2/3/2021, at 4-8.  Appellant, however, is represented by counsel on appeal.

[At docket number] MD-6-21, [Victim] testified that on December 6, 2020, [Appellant] texted her in the morning making threats, telling her that he loved her and wanted to be with her. [Appellant] wanted to know why [Victim] was "doing this." [Appellant] always followed up these types of texts with angry texts. When [Victim came] back [] from shopping, [Appellant] came up into the driveway and pulled [Victim's] car door open and grabbed her by the arm and tried to pull her out of the car. [Victim] said that [Appellant] appeared to believe that [Victim] was alone in the car and was shocked when [Victim's] girlfriend pulled her back into the car. The girlfriend [] texted her husband [] to come outside, because [Appellant] was outside harassing them. The girlfriend was scared. [Her husband] asked [Appellant] to leave the property. [Appellant] walked out into the street and screamed at [the girlfriend's husband] until the police arrived.

[At docket number] MD-11-21, this incident occurred at [Victim's] home on December 6, 2020. [Victim] received threatening texts from [Appellant] throughout the day. Late at night, [Appellant] came to [Victim's] door and started banging on the door. As [Victim] was calling the police [Appellant] went to a side window and began yelling through the window. [Appellant] called [Victim] a tramp and threatened her boyfriend, who was present, calling the boyfriend a "dead man." When the police arrived, [Appellant] had fled. However, [Appellant] then texted her, while using her wireless internet reception, so [Victim] knew he was somewhere close by. The police could not locate him. [Victim] was scared for her safety.

[At docket number] MD-12-21, the incident occurred on December 4, 2020 at [Victim's] home. [Appellant] came to her door, pounded on the door and threatened to steal her car, claiming to have title to it. [Victim] told him that he had stolen the title out of her mailbox and that she was calling the police. [Appellant] spotted [Victim's] boyfriend through the window and threatened to harm him. [Appellant] fled the scene before the police arrived and then texted [Victim's] boyfriend later that day, threatening him.

\*         \*         \*

[…At docket number] MD-6-21, [Victim's Father] testified that he knows [Appellant] and that on December 2, 2020, [Victim's Father] was watching his daughter's four children at her home while she was out shopping with a friend. While doing so,

- 4 -

[Appellant] rode up to the home twice on his motorcycle. Then [Appellant] came up to the door and knocked. [Victim's Father] ignored the knocking. After approximately thirty minutes elapsed, [Victim's Father] observed [Appellant] standing in the kitchen of the home. [Appellant] had walked around to the rear of the home, come in the back, and was standing in the kitchen. [Victim's Father] had the two youngest children on his lap. They were sleeping, [Appellant] said that [Victim] owed him money and he was also looking for his phone. [Victim's Father] told [Appellant] that he did not know anything about that, that [Appellant] was not supposed to be there, and that [Appellant] should leave. [Victim's Father] asked his son [] to call the police for him. When the police arrived, [Appellant] was outside, sitting on his motorcycle.

Trial Court Opinion, 4/14/2021, at 2-5.

Following a bench trial on February 3, 2021, the trial court found Appellant guilty of all five indirect criminal contempt charges for violating the terms of the July 2018 PFA order. *See* N.T., 2/3/2021, at 29. The trial court sentenced Appellant to an aggregate term of 30 months of imprisonment, representing six-month, consecutive sentences for each offense. *Id.* at 32-34. The trial court also ordered a mental health evaluation and treatment. *Id.* at 33. On February 12, 2021, counsel from the Public Defender's Office entered an appearance on behalf of Appellant. This timely, counseled appeal resulted.[3]

_____

[3] On February 12, 2021, counsel for Appellant filed five notices of appeal, one at each docket number. Each notice contains all five trial court docket numbers, but each notice of appeal has a separate trial court docket number highlighted. Appellant has complied with Pa.R.A.P. 341 and our Supreme Court's decision in *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018). *See Commonwealth v. Johnson*, 236 A.3d 1141, 1148 (Pa. Super. 2020), *appeal denied*, 242 A.3d 304 (Pa. 2020) ("Because Johnson appealed from four docket numbers and filed four notices of appeal, Johnson has complied
*(Footnote Continued Next Page)*

On appeal, Appellant raises the following issues for our review:

I.      Whether the [trial c]ourt erred in not stating, on the record, any reason for imposing a sentence of total confinement.

II.     Whether the [trial court's] decision to sentence [Appellant] to the maximum, consecutively for each case, raises the aggregate sentence to an excessive level, in light of the criminal conduct at issue.

Appellant's Brief at 4.

As Appellant acknowledges, his claims on appeal challenge the discretionary aspects of his sentence. *Id.* at 3. We have previously determined:

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed

---

with ***Walker***. The fact that each notice of appeal listed all four docket numbers does not invalidate his notices of appeal, and we decline to quash his appeals."). In an abundance of caution, within the 30-day appeal period pursuant to Pa.R.A.P. 903, on February 26, 2021, counsel for Appellant filed separate notices of appeal listing only one docket number at each docket to ensure compliance with ***Walker***. On February 17, 2021, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on March 9, 2021. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 14, 2021. By order entered on March 15, 2021, this Court *sua sponte* consolidated the appeals.

> from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013); *see also Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa. Super. 2012) ("Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.").

At sentencing, Appellant neither objected nor brought his discretionary sentencing claims to the attention of the trial court. *See* N.T., 2/3/2021, at 32-34. Moreover, Appellant did not file post-sentence motions at any of the five dockets, either *pro se* or with the assistance of counsel after the Public Defender's Office entered its appearance on Appellant's behalf.[4] By failing to raise his claims at sentencing or by way of a post-sentence motion, Appellant deprived the trial court of an opportunity to take corrective action or to modify his sentence. Hence, he has not properly preserved his claims or validly invoked our jurisdiction to consider this appeal.

Pennsylvania Rule of Criminal Procedure 720(B)(1)(a)(iv) provides that "[t]he defendant in a court case shall have the right to make a post-sentence

---

[4] Counsel entered an appearance on behalf of Appellant nine days after sentencing.

- 7 -

motion[.]" Pa.R.Crim.P. 720(B)(1)(a). Post-sentence motions requesting the modification of sentence, however, are optional. Pa.R.Crim.P. 720(B)(1)(a)(iv). A "[w]ritten post-sentence motion shall be filed no later than 10 days after imposition of sentence." Pa.R.Crim.P. 720(A)(1). We examine whether the sentencing court gave "sufficient and accurate information regarding the time requirements for filing a post-sentence motion and for filing a notice of appeal to this Court." *Commonwealth v. Dreves*, 839 A.2d 1122, 1129 (Pa. Super. 2003) (*en banc*).

Here, the sentencing court properly informed Appellant that he had the optional right "to file a motion for modification of sentence within ten days from [the date of sentencing], but [added that Appellant did not] have to do that." N.T., 2/3/2021, at 34. The sentencing court also informed Appellant that he could appeal within 30 days and that he was entitled to the representation of counsel on appeal. *Id.* Thus, the trial court complied with Pennsylvania law and accurately advised Appellant about the time requirements for filing a post-sentence motion and a notice of appeal.

The trial court's added observation that post-sentence motions are optional does not alter our conclusion that Appellant failed to preserve his claims and, in turn, failed to validly invoke our jurisdiction to review his discretionary sentencing challenges. "Under Pennsylvania law, *pro se* defendants are subject to the same rules of procedure as are represented defendants." *Commonwealth v. Blakeney*, 108 A.3d 739, 766 (Pa. 2014),

*citing* **Commonwealth v. Williams**, 896 A.2d 523, 534 (Pa. 2006) (*pro se* defendants are held to same standards as licensed attorneys). "[*P*]*ro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel[.]" **Id.** Furthermore, while counsel entered her appearance for Appellant within the 10-day period set forth in Rule 720, she failed to file post-sentence motions and did not otherwise seek leave to file a motion for modification of sentence *nunc pro tunc* during the 30-day appeal period. **See Dreves**, 839 A.2d at 1128 (footnote omitted) ("To be entitled to file a post-sentence motion *nunc pro tunc*, a defendant must, within 30 days after the imposition of sentence, demonstrate sufficient cause, *i.e.*, reasons that excuse the late filing."). Moreover, Appellant, in his counseled brief, did not fully address our four-part test for invoking jurisdiction over his discretionary sentencing claims, including whether he properly preserved his issues at sentencing or in a motion to reconsider and/or modify his sentence.

Accordingly, because Appellant never filed post-sentence motions or objected to his sentence at the sentencing hearing, he "did not give the sentencing judge an opportunity to reconsider or modify his sentence" and, therefore, his discretionary sentencing claims are waived. **Commonwealth v. Mann**, 820 A.2d 788, 794 (Pa. 2003).[5] As such, we are constrained to

---

[5] More specifically, in **Mann**, we noted:
*(Footnote Continued Next Page)*

conclude that Appellant has waived his sentencing challenges and he cannot raise them for the first time on appeal. *See* Pa.R.A.P. 302(a).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2021

---

[Mann] filed a post-sentence motion alleging that his sentence was unduly severe and that the trial court abused its discretion under the Sentencing Code. However, [Mann] failed to raise the specific claim regarding the sentencing court's alleged failure to state the reasons for his sentence on the record. In addition, [Mann] did not raise this specific reason during the sentencing hearing. As such, [Mann] did not give the sentencing judge an opportunity to reconsider or modify his sentence on this basis, and, therefore, the claim is waived.

*Mann*, 820 A.2d at 794, *citing* **Commonwealth v. Reeves**, 778 A.2d 691, 692–693 (Pa. Super. 2001) (by failing to raise the specific claim that the trial court failed to state reasons for sentence on the record in post-sentence motion, the trial court was deprived of opportunity to consider claim and thus the claim was waived on appeal).